UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D'ANDRE ALEXANDER,

      Plaintiff,                                          No. 15-10294

vs.                                                  District Judge David M. Lawson

ANN HOFFMAN, SHANNON FLAUGHER,   Magistrate Judge R. Steven Whalen
EDWARD NEITZEL, JERMAR ROZIER,
WILLIAM PUTNAM, SCOTT WALTHER,
RUSSELL VITTITOW, DARREL BARROWS,
DONALD RICUMSTRICT, O'BELL THOMAS
WINN, SCOTTY FREED, JAMES ZUMMER,
THOMAS FINCO, EDWARD PAINE, LLOYD
RAPELJE, BOBBY KARL, DELANDON THOMAS,
JEFF STOLTENBERG, CHARLES TURNER,
CORRECTIONS OFFICER VANSURMAN, and
ROBERT NORTON,

      Defendants.
_____/

## **OPINION AND ORDER**

     On January 23, 2015, Plaintiff D'Andre Alexander, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") filed a *pro se* civil complaint under 42 U.S.C. § 1983, naming as Defendants 21 MDOC employees. Before the Court is Defendants' Motion to Sever Based on Misjoinder of Parties and Claims [Doc. #39]. Although the claims against each Defendant cover a range of alleged constitutional violations, they are all related to Plaintiff's claim of retaliation and conspiracy to retaliate for his having filed grievances. Therefore, for the reasons discussed more fully below,

Defendants' motion is DENIED.

## I. FACTS

Plaintiff's complaint (excluding exhibits) is lengthy, consuming 283 numbered paragraphs in 47 pages.[1] Defendant Hoffman was an Assistant Resident Unit Supervisor ("ARUS") at the Saginaw Correctional Facility; Defendants Flaugher, Nietzel, Stoltenberg, Putnam, Paine, Rozier, Walters, Vansurman, Karl, and Thomas were Corrections Officers at the Saginaw Facility; Defendant Vittitow was a grievance coordinator; Defendants Turner and Burrows were nurses at the Saginaw Facility; Defendant Zummer was a Resident Unit Manager ("RUM") in the unit at Saginaw where Plaintiff was housed; Defendant Rapelji was the Warden of the Saginaw Facility; Defendants Ricumstrict and Winn were Deputy Wardens at Saginaw; Defendant Freed was a hearing investigator at Saginaw; and Defendant Norton was a RUM at the Chippewa Correctional Facility, where Plaintiff was eventually transferred.

Plaintiff alleges that his problems started when he filed a grievance against Defendant Vittitow on March 20, 2013. A couple of weeks later, Corrections Officer Williston issued a ticket against Plaintiff, saying, "You haven't seen harassment yet. You keep playing games, I will set you up." *Complaint* [Doc. #1], ¶¶ 15-23.  According to

---

[1] The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Plaintiff, Williston also said, "I have co-workers that will set you up too, and I will have you moved or transferred if you keep writing grievances. I'm friends with the right people that can make that happen." *Id*. ¶ 26. The next day, Plaintiff was interviewed by Defendant Hoffman regarding the grievance he filed against Williston. He claims that Hoffman made comments indicating that if he continued to write grievances, he would suffer retaliatory consequences. Hoffman reportedly said, "This grievance is retaliation. Now keep it up. A knife will get put on you. He (Williston) does has (sic) friends to make things happen, and I'm one of them. And if you even think about ever writing a grievance on me, your (sic) our of here! Now get out." *Id*. ¶ 30. Subsequently, Hoffman issued Plaintiff a misconduct ticket for possession of a knife. *Id*. ¶ 95. Hoffman allegedly said, "I'm gonna have Winn get you out of here." *Id*. ¶ 94.

On June 6, 2013, Defendant Nietzel conducted a pat-down search of Plaintiff, who claims that Nietzel intentionally squeezed his testicles, causing great pain. Later, Plaintiff had blood in his urine. *Id*. ¶¶ 47-52. He claims that Health Care workers, including Defendants Turner and Barrows, declined to provide proper treatment in a "cover up" effort. *Id*. ¶¶ 69, 109-117, 126, 140.

On June 27, 2003, Plaintiff was transferred to the Chippewa Facility. He alleges that at that time, and in response to a question as to why Plaintiff's legal mail was not being properly processed, Defendant Zummer told him, "You should not have fucked with Hoffman jerk." *Id*. ¶ 192.

Plaintiff asserts the following claims against the following Defendants:

Hoffman: First Amendment Retaliation by writing a false misconduct ticket. *Id*. ¶¶ 265, 283.

Flaugher: First Amendment Retaliation by conspiring to support the allegedly false weapons charge. "Flaugher assisted Hoffman in this conspiracy and acted in concert with her." *Id*. ¶ 266.

Nietzel: Eighth Amendment violation by forcefully grabbing and injuring Plaintiff's testicles. Plaintiff claims that Neitzel did this in retaliation for writing grievances. *Id* ¶ 267.

Zummer: Denial of access to the courts by "intentionally denying Plaintiff the opportunity to send out his legal mail." Plaintiff alleges that Zummer told him he was doing this in retaliation for Plaintiff writing grievances. He claims that Zummer said, "You should not have fucked with Hoffman jerk." *Id*. ¶ 268.

Turner and Burrows: Plaintiff claims that these two nurses denied him pain medication for the groin injury caused by Nietzel, in violation of the Eighth Amendment. *Id*. ¶ 269.

Ricumstrict and Winn: Retaliation for filing grievances, by having Plaintiff transferred to a facility in the Upper Peninsula. *Id*. ¶¶ 270-271.

Vittitow: First Amendment retaliation for Plaintiff having filed grievances, as well as conspiring with and covering up for Hoffman. *Id*. ¶ 272. Plaintiff also alleges that

Vittitow himself wrote a false, retaliatory misconduct ticket. *Id*. ¶ 277.

Stoltenberg: First Amendment, Eighth Amendment and Fourteenth Amendment Equal Protection claims, based on Stoltenberg's allegedly having discarded Plaintiff's grievances and complaints. *Id*. ¶ 273.

Norton: First Amendment retaliation, by finding Plaintiff guilty of a false misconduct. *Id*. ¶ 274.

Finco: Retaliation, based on Finco having approved a retaliatory misconduct charge, "knowing that this misconduct was retaliatory." *Id*. ¶ 275.

Freed: Plaintiff alleges that Freed participated with Hoffman in a conspiracy to retaliate, by suppressing favorable evidence that could have exonerated Plaintiff at the misconduct hearing. *Id*. ¶ 278.

Turner, Paine, Walters, Rozier, Karl, and Putman: Plaintiff alleges a number of Eighth Amendment, First Amendment, and Due Process violations, centering on breaching the confidentiality of medical information. Plaintiff further alleges that Payne denied him yard privileges while he was in segregation, for "retaliatory purposes." *Id*. ¶¶ 279-282.

## II. LEGAL PRINCIPLES

Fed.R.Civ.P. 20(a)(2) addresses the joinder of multiple parties as follows:

"Persons...may be joined in one action as defendants if:

(A)  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

>transaction, occurrence, or series of transactions or occurrences; and
>
>(B) any question of law or fact common to all defendants will arise in the action."

Under Fed.R.Civ.P. 21, if parties are misjoined, the Court may drop a party or sever any claim against a party. However, the joinder of claims and parties is "strongly encouraged" when appropriate to further judicial economy and fairness. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Federal Rules encourage "entertaining the broadest possible scope of action consistent with fairness to the parties." *Crutcher v. Kentucky*, 961 F.2d 1576 (Table), 1992 WL 98020, at *3 (6th Cir.1992) (quoting *United Mine Workers*).

### III. DISCUSSION

It is important to note that the narrow issue presented in this motion is whether there has been an improper joinder of claims or Defendants under Rule 20. The issue is not whether any or all of Plaintiff's claims meet the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That question can be decided at a later time.

It is apparent that Plaintiff files a lot of grievances, and if his allegations are believed, he has incurred the enmity of these MDOC Defendants by doing so. While it is true that he has raised a plethora of claims, ranging from Eighth Amendment deliberate indifference to his medical care, to denial of the right of access to the courts by the destruction of his legal mail, to assaults by prison guards, to a retaliatory transfer, the

theme that holds all of these claims together, and entails a common question of law and fact, is that all of the actions taken by these Defendants were based on a common retaliatory motive, and amounted to a broad-based and multi-faceted conspiracy to punish him for exercising his First Amendment right to file grievances. For example, Plaintiff alleges that Corrections Officer Williston threatened that he had co-workers that would "set him up," and that he was "friends with the right people that can make that happen." *Complaint*, ¶ 26. He claims that Defendant Hoffman reiterated that Williston had friends to "make things happen," and that she was one of them. *Id*. ¶ 30. After issuing Plaintiff what he claims was a false misconduct ticket for possession of a knife, Hoffman reportedly said, "I'm gonna have Winn get you out of here." *Id*. ¶ 94. Plaintiff alleges that Defendant Zummer actually admitted that he was tampering with legal mail in retaliation for filing grievances, and told Plaintiff that he "should not have fucked with Hoffman." " *Id*. ¶ 268. Plaintiff says that Deputy Warden Winn told him he was going to send him "up North" for writing grievances. *Id*. ¶¶ 221, 243. He suggests that the reach of Hoffman, Winn, Flaugher, Williston, and others at the Saginaw Facility, including the Warden, extended to Defendant Norton at the Chippewa Facility, who found Plaintiff guilty of a misconduct ticket for retaliatory reasons, threatening that if he "wrote grievances at [Chippewa], they would do him worst (sic) than [Saginaw] did him." *Id*. ¶ 274.

In their motion, the Defendants agree that Hoffman and Flaugher can be properly joined because "the conspiracy claim (at paragraph 266) is arguably related to the claim in

paragraph 265 of the complaint." *Defendants' Motion* [Doc. #39], at p. 4. However, while the chain of events set forth in the complaint may have begun with Hoffman, Flaugher, and Williston, the conspiracy that Plaintiff alleges is much broader, "arguably" encompassing all of the Defendants in a broad-based scheme to retaliate against a prolific grievance writer.

Where otherwise separate acts, claims, and defendants are alleged to be part of a conspiracy, joinder under Rule 20 is appropriate. In *Terry v. Cmty. Bank of N. Virginia*, 255 F. Supp. 2d 817, 824-25 (W.D. Tenn. 2003), the plaintiffs brought consumer and civil conspiracy actions against CBNV Bank and a number of other defendants. CBNV moved for severance, arguing that the claims involved "different banks, different contracts and different terms." *Id*. The Court held:

> "Plaintiffs aver that the 1998 and 1999 loans are part of a conspiracy which involved the same parties in reality, and therefore constitute a series of occurrences or transactions. The Court finds this allegation sufficient to permit joinder of these claims." *Id*.

In *S.E.C. v. Carroll*, 2011 WL 5880828, at *1-2 (W.D. Ky., 2011), the Court observed that "[d]etermining whether the Defendants' conduct constituted the same series of transactions for the purpose of Rule 20 joinder is a case-by-case factual analysis." In *Carroll*, the Security and Exchange Commission brought suit against a number of defendants alleging insider trading in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The defendants moved for severance, arguing that their alleged conduct was not sufficiently related, did not constitute the same transaction or

occurrence, and that there were no questions of law or fact common to all defendants. Although noting that there was no definitive Sixth Circuit case law on the issue, the Court, in denying severance, construed the language of Rule 20 in the context of Fed.R.Civ.P. 13(a), dealing with counterclaims:

> "The Supreme Court has interpreted the same 'transaction or occurrence' language in the context of Rule 13(a) counterclaims to 'comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.' *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). Other courts have applied this construction to the Rule 20 context to allow joinder of all logically related claims for relief. *Mosley* [v. General Motors], 497 F.2d [1330] at 1333; accord *Alexander* [v. Fulton County, Ga.], 207 F.3d [1303] at 1323; *DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630, 631 (D.Kan.2004) and *SEC v. Woodruff*, 778 F.Supp.2d 1073, 1098 (D.Colo.2011). The Sixth Circuit has not adopted or rejected the 'logically related' construction of Rule 20's 'same transaction' requirement, but this Court finds persuasive the reasoning that 'transaction or occurrence' as used in Rule 20 should have the same meaning as it does in Rule 13. Thus, the Court will not require 'absolute identity of all events,' but instead will determine if the alleged facts are so logically related as to comprise the same series of transactions. *Mosley*, 497 F.3d at 1333."

Defendants rely on three unpublished District Court cases, *Fields v. Martin*, 2013 WL 5182182 (E.D. Mich. 2013)(Steeh, J.); *Prince v. Elum*, E.D. Mich. No. 12-15526, Dkt. #4 (Rosen, J.); and *Cary v. Robinson*, W.D. Mich. No. 13-431 (Brenneman, M.J.).[2] However, unlike the present case, the complaints in those cases did not raise an overarching conspiracy/retaliation claim that tied the other claims together. In *Prince*, the

---

[2] *Prince* and *Cary* do not have Westlaw citations. Defendants have submitted copies of the decisions as Exhibit 1 and Exhibit 3 to their motion, respectively. A copy of the decision in *Fields* is found in Exhibit 2.

plaintiff not only raised completely separate retaliation claims against separate defendants, but raised unrelated claims of denial of medical care and violation of the Americans with Disabilities Act and the Rehabilitation Act against other defendants. Likewise in *Fields*, the plaintiff raised a claim of religious discrimination that was completely unrelated to his remaining seven claims. In *Cary*, the Court permitted the joinder of two claims: Claim1, an alleged taking of a religious medicine bag, and Claim 3, a retaliation claim that was related to Claim 1. The Court held:

> "Based on these allegations, it appears that Claims 1 and 3 could be permissively joined under Fed. R. Civ. P. 20, because Claim 1 arose out of the 'same transaction, or series of transactions or occurrences' as Claim 3, and both claims appear to involve some common questions of law and fact." *Id*. at 3-4.

However, the parties agreed that a completely unrelated claim could be dismissed. If anything, *Cary* supports the Plaintiff's argument that joinder is permissible in this case.

I accept the reasoning of *Terry* and *Carroll*, and find that giving Plaintiff's *pro se* complaint a liberal construction, as we must, the rights to relief he has asserted "arise out of the same transaction, occurrence, or series of transactions or occurrences," and that there is at least one question of law and fact common to all the Defendants, to wit, the existence of a broad conspiracy to retaliate against Plaintiff in violation of the First Amendment.

To be clear, in ruling on the severance/joinder issue, I am not addressing the merits of the Plaintiff's various claims, and I offer no opinion at this time as to whether any or all of the claims might be subject to dismissal under Fed.R.Civ.P. 12(b)(6) or 12(c).

## IV.   CONCLUSION

Defendants' Motion to Sever Based on Misjoinder of Parties and Claims [Doc. #39] is DENIED.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: March 31, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 31, 2016, electronically and/or by U.S. mail.

s/C. Ciesla
Case Manager